UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| NORTHWEST BANK, formerly known as First National Bank,<br><br>Plaintiff,<br><br>vs.<br><br>SOVEREIGN HOLDINGS, INC.,<br><br>Defendant. | 4:15-CV-04066-KES<br><br><br>MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

Plaintiff, Northwest Bank, filed suit against defendants, Sovereign Holdings, Inc., Hepar, L.L.C., and Mary Ellen Nylen, asserting claims for breach of contract, conversion and fraudulent transfer, breach of fiduciary duty, and injunctive relief through the imposition of a constructive trust. Docket 1. Northwest and defendants stipulated to the dismissal of all claims except the breach of contract claim against Sovereign. Docket 38. Northwest now moves for partial summary judgment on the breach of contract claim. Sovereign opposes the motion. For the following reasons, Northwest's motion is granted.

**BACKGROUND**

Construing the facts in a light most favorable to the non-moving party, Sovereign, the facts are as follows:

Northwest Bank[1] is a state bank incorporated in Iowa with a principal place of business in Spencer, Iowa. Sovereign is a business incorporated in South Dakota with a principal place of business in Jefferson, South Dakota.

---

[1] Northwest Bank is a successor by merger to First National Bank of Sioux City, Iowa, which was effective October 12, 2013.

Hepar is a limited liability company organized in South Dakota with a principal place of business in Jefferson, South Dakota. Hepar is a 100% owned subsidiary of Sovereign. Mary Ellen Nylen is President and Treasurer of Sovereign. Mark Nylen is Vice President and Secretary of Sovereign. Hepar Bioscience, L.L.C. is a separate company owned and managed at least in part by Mark Nylen or Mary Ellen Nylen.

To secure loans made by Northwest to Hepar Bioscience, Sovereign executed multiple guarantees to Northwest. Sovereign executed guarantees on December 13, 2011, January 4, 2012, and May 20, 2013. Docket 1-1; Docket 1-2; Docket 1-3. On September 17, 2014, under a business loan agreement and promissory note, Northwest loaned Hepar Bioscience $19,678,345.72.

On February 20, 2015, Hepar Bioscience filed a petition under Chapter 11 of the United States Bankruptcy Code in United States District Court for the District of South Dakota. On March 13, 2015, Northwest accelerated the amount due on the loan and demanded that Sovereign remit full payment on the outstanding debt as provided in the loan guarantees. As of May 2015, the outstanding principal on the loan is $18,561,612.25[2].

---

[2] Northwest alleges that the outstanding debt is $18,561,612.25. Sovereign has not offered a current loan figure. In its response to Northwest's statements of material fact in support of Northwest's motion for summary judgment, Sovereign stated that "Sovereign cannot admit or deny the amount owed by Hepar Bio [sic] as it does not have a copy of the note or agreement referenced there[.]" Docket 42 at 3, ¶9.

## STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)). The moving party must inform the court of the basis for its motion and also identify the portion of the record that shows there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

Once the moving party has met its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). For purposes of summary judgment, the facts and inferences drawn from those facts are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S.

654, 655 (1962)).

## DISCUSSION

Because neither party disputes the validity of the guarantees, the court

finds that the guarantees constitute valid contracts. *See City of Davenport v.*

*Shewry Corp.*, 674 N.W.2d 79, 86 (Iowa 2004) ("[A] guaranty is a contract by

one person to another for the fulfillment of a promise of a *third* person.")

(alterations in original). Due to a choice of law provision in the guarantees, the

parties also agree that Iowa law governs the breach of contract claim.

Docket 1-1 at ¶14; Docket 1-2 at ¶14 (stating the "Guaranty is governed by the

laws of Iowa[.]"). As such, the only issue is whether Sovereign's conduct

constitutes a breach of the guarantees.

Under Iowa law, a plaintiff must establish the following elements to

succeed on a breach of contract claim:

> (1) the existence of a contract, (2) the terms and conditions of the
> contract, (3) that [plaintiff] has performed all the terms and
> conditions required under the contract, (4) the defendant's breach
> of the contract in some particular way, and (5) that plaintiff has
> suffered damages as a result of the defendant's breach.

*Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010)

(citing *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224

(Iowa 1998) (alterations in original)).

The parties agree that Northwest has satisfied the first three elements of

the claim. Northwest filed the three guarantees with the court, satisfying the

first two elements. Northwest has also performed its contractual obligations by

loaning over 19 million dollars to Hepar Bioscience, which satisfies the third element. As to the fourth and fifth elements, Northwest argues that Sovereign breached the contract by failing to pay the outstanding loan balance that came due after Hepar Bioscience defaulted on the loan. Generally, Sovereign agrees that the bankruptcy petition filed by Hepar Bioscience permitted Northwest to accelerate the amount due on the loan and to demand payment from Sovereign. Despite this position, Sovereign disputes that summary judgment is appropriate by arguing that (1) Hepar Bioscience's reorganization plan in bankruptcy court renders Northwest's breach of contract claim moot, (2) Northwest allegedly waived or limited the assets that it can obtain from Sovereign due to promissory estoppel, and (3) the court should defer judgment on Northwest's motion until the divorce action between Mark and Mary Ellen Nylen is resolved. The court will address each argument in turn.

### a. Hepar Bioscience's reorganization plan in bankruptcy court does not render Northwest's claim moot.

In support of the argument that Hepar Bioscience's reorganization through bankruptcy renders the breach of contract claim moot, Sovereign asserts that the reorganization plan specifically considers Sovereign's guarantees to Northwest. Under the reorganization plan, Sovereign alleges that "paragraph 1, page 11, states that Northwest Bank is fully secured. The plan goes on to state that 'any "adverse change" and deemed "insecurity" clauses in the loan documents which would allow the creditor to notice a default are terminated upon confirmation of the plan.' " Docket 44 at 3. Sovereign argues that because of the reorganization plan, "Hepar Bio [sic] is no longer in default

5

and the Bank's action against the guarantor will be moot." *Id.* In light of the alleged mootness of the claim, Sovereign urges the court to delay its judgment on the motion for summary judgment until the bankruptcy proceedings are complete. Sovereign offers no authority to support these arguments.

In response to Sovereign's request that the court defer judgment on Northwest's motion for summary judgment, Northwest argues that Sovereign should have sought protection from the bankruptcy court, not a district court, in order to stay the motion. Docket 48 at 6 (citing *C.H. Robinson Co. v. Paris & Sons, Inc.*, 180 F. Supp. 2d 1002, 1018 (N.D. Iowa 2001)). But even if Sovereign pursued a stay of proceeding from the bankruptcy court, Northwest argues that a deferred judgment is generally not available to guarantors of debt. *Id.* (citing *In re F.T.L., Inc.*, 152 B.R. 61, 63 (Bankr. E.D. Va. 1993) (stating that absent compelling and unusual circumstances, guarantor of debt must file its own bankruptcy petition to obtain a stay in a district court proceeding)).

As to the impact of the Hepar Bioscience's bankruptcy petition on the substance of the breach of contract claim, Northwest argues that both the written guarantees and Iowa case law mandate that Sovereign is liable for the outstanding loan balance. Northwest first cites paragraph 5 of the December 2011 and January 2012 guarantees[3], which consider a scenario where Hepar Bioscience files a petition for bankruptcy. *See* Docket 1-1 at ¶5; Docket 1-2 at

---

[3] Northwest does not cite the May 2013 guarantee. The court notes that the 2013 guarantee does not contain a specific provision addressing a situation where Hepar Bioscience files a petition for bankruptcy. But, the court finds that the guarantee as a whole essentially mirrors the provisions contained in the December 2011 and January 2012 guarantees.

¶5. In part, both guarantees provide the following: "If a bankruptcy petition should at any time be filed by or against [Hepar Bioscience], the maturity of the Debt, so far as [Sovereign's] liability is concerned, shall be accelerated and the Debt shall be immediately payable by [Sovereign]." *Id.* Northwest also argues that Iowa law holds guarantors liable when debtors default on a loan, regardless of whether the creditor can seek recovery from the principal debtor. Docket 48 at 6 (citing *Kent Feeds, Inc. v. Manthei*, 646 N.W.2d 87, 91 (Iowa 2002) (stating that an unconditional guarantee imposes liability on the guarantor upon the default of debtor irrespective of whether the creditor seeks recovery from debtor, "particularly where their liabilities arise from separate instruments.")).

The court agrees with Northwest's position. Even if the court assumes that the bankruptcy court will eventually approve Hepar Bioscience's reorganization plan, Sovereign offers no authority to support its argument that a stay in this proceeding is appropriate or that Northwest's breach of contract claim against Sovereign is somehow moot. In contrast, Northwest offers ample support for the court to find that Sovereign should have sought relief from the bankruptcy court if it desired to stay this action. *C.H. Robinson Co.*, 180 F. Supp. 2d at 1018.  The court also finds that the plain language of the written guarantees and Iowa case law establish that Sovereign is liable for the outstanding debt because Hepar Bioscience defaulted on its loan. *See* Docket 1-1 at ¶5; Docket 1-2 at ¶5; *see also Kent Foods, Inc.*, 646 N.W.2d at 91. Thus, the court finds that Hepar Bioscience's reorganization plan provides neither a

basis for rendering the breach of contract claim moot nor an avenue to stay this action. This argument also does not create any dispute of material fact relating to the breach of contract claim.

> **b.      The defense of promissory estoppel is not relevant to the issue of whether Sovereign's conduct breached the guarantees.**

Sovereign next argues that the court should limit Northwest's right to recover under the guarantees. Sovereign relies upon communications from Troy Heitman, Executive Vice President and Senior Lender for Northwest. Sovereign cites two emails that Heitman sent to Mark Nylen. The first email was sent on July 30, 2014. It addressed the prospective sale of a Hepar asset, a Cessna airplane:

> Northwest Bank understands that Hepar LLC (which is owned by Sovereign Holdings, Inc.) has as its primary asset an airplane. Sovereign Holdings is a guarantor of certain loans made by Northwest Bank to Hepar Bioscience LLC. Northwest Bank consents to the sale of the airplane by Hepar LLC and waives any interest it may have (whether through Sovereign Holdings, Inc. or otherwise) in the airplane or the proceeds from the sale of the airplane and shall make no claim to the airplane or the proceeds from the sale of the airplane.

Docket 45 at 9. Sovereign also cites a second email from Heitman that considers the sale of transportation equipment owned by Sovereign. The second email states the following:

> I write you in response to your letter of November 10, 2014 regarding an auction you referenced was held on November 6, 2014. The bank is not willing to waive the Sovereign Holding Inc's Guaranties of the obligations of Hepar BioScience, L.L.C. that it currently holds. The Bank does not have a security interest in Sovereign's transportation equipment and accordingly, at this time takes no position regarding the auction of such equipment.

*Id.* at 10. Based on these emails, Sovereign urges the court to hold that Northwest is estopped from acquiring any proceeds from the sale of the airplane or transportation equipment as a means of collecting on the guarantees.

Northwest responds by asserting that the potential avenues available for collecting on a judgment are irrelevant to the question of whether the court should grant summary judgment on the breach of contract claim. Northwest cites *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), emphasizing that a court's inquiry regarding a motion for summary judgment is limited to the facts that are relevant to the claim at issue. As it pertains to the breach of contract claim, Northwest submits that Sovereign's argument could only be relevant if Northwest had waived the *guarantees*. Docket 48 at 4. But the second email cited by Sovereign confirms that Northwest was unwilling to do so.

While Sovereign may eventually be able to raise a promissory estoppel defense as a means of protecting proceeds from the sale of the aircraft and transportation equipment, the court finds that the defense is not relevant to the issue of whether Northwest is entitled to a judgment in the full amount owed on the breach of contract claim. When reviewing this motion, the court's inquiry is limited to whether Sovereign's conduct breached the contract and whether it caused Northwest any damages. *See Royal Indem. Co.*, 786 N.W.2d at 846. Sovereign offers no authority to show how promissory estoppel is relevant regarding the issue of whether it breached the written guarantees.

Thus, the court finds that the promissory estoppel argument does not create a genuine issue of material fact that precludes summary judgment.

      **c.     A state-court divorce proceeding does not provide a basis for deferring judgment on the breach of contract claim.**

Sovereign urges the court to defer judgment on the breach of contract claim until a divorce action between Mark Nylen and Mary Ellen Nylen is complete. Sovereign relies upon Federal Rule of Civil Procedure 56(d)(1), which states: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it[.]" Fed R. Civ. P. 56(a)(1). Sovereign cites an order from the Honorable Judge Steve Jensen, First Judicial Circuit in Union County, South Dakota. Sovereign asserts that the order states that funds in a Sovereign bank account cannot be removed without Judge Jensen's approval and order. Docket 44 at 7. According to Sovereign, this order, and the final resolution of the divorce action, may render Northwest's cause of action moot. *Id.* Sovereign offers no authority to support this argument.

It is unclear to the court how a state-court divorce proceeding would impact its analysis regarding the motion for summary judgment on the breach of contract claim. Because Sovereign has failed to provide sufficient support for this argument, the court finds that the state-court divorce proceeding does not create any disputes of material fact that are relevant to the motion before the court.

**CONCLUSION**

The parties agree that the guarantees Sovereign provided to Northwest are effective and constitute valid contracts. The parties also agree that Northwest cites sufficient grounds upon which it accelerated the outstanding loan payments due from Hepar Bioscience. The defenses asserted by Sovereign are not based on disputes of fact. Instead, Sovereign offers only legal defenses to the motion for summary judgment. The court finds that Hepar Bioscience's reorganization plan filed in bankruptcy court does not render the breach of contract claim moot. The court also finds that Sovereign's defenses relating to promissory estoppel and the state-court divorce proceeding are not relevant to the court's analysis of the breach of contract claim. Thus, it is

ORDERED that Northwest's motion for partial summary judgment (Docket 31) is GRANTED. It is

FURTHER ORDERED that in the event the parties are unable to agree on the amount owed under the guarantee, Northwest will file an affidavit detailing current damages stemming from the breach of contract claim by March 10, 2016. If Sovereign has objections, its response is due by March 21, 2016. It is

FURTHER ORDERED that the motion for a preliminary injunction (Docket 11) is denied as moot.

Dated February 23, 2016.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

11