UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| NORTHWEST BANK, f/k/a First National Bank, <br><br> Plaintiff, <br><br> vs. <br><br> SOVEREIGN HOLDINGS, INC., <br><br> Defendant. | 4:15-CV-04066-KES <br><br><br> ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY FEES |

Plaintiff, Northwest Bank, filed suit against defendants, Sovereign Holdings, Inc., Hepar, L.L.C., and Mary Ellen Nylen, asserting claims for breach of contract, conversion and fraudulent transfer, and breach of fiduciary duty. Docket 1. Northwest also requested injunctive relief through the imposition of a constructive trust. *Id.* Northwest and defendants stipulated to the dismissal of all claims except the breach of contract claim against Sovereign. Docket 38. On February 23, 2016, this court granted Northwest's motion for partial summary judgment on the breach of contract claim. Docket 59. Northwest now seeks to recover attorneys' fees of $158,738.90 from Sovereign based on the parties' contract. *Id.* The court grants in part and denies in part Northwest's motion.

## BACKGROUND

Sovereign is a South Dakota corporation owned by Mary Ellen Kisting (formerly Nylen) and Mark A. Nylen as trustee. Docket 80 at 2. Sovereign

executed three unlimited guaranties to Northwest securing a loan made by Northwest to Hepar BioScience, LLC, a company that was principally owned by Mark. Docket 32 at 2. Sovereign signed the guaranties in December 2011, January 2012, and May 2013. Docket 34-1; Docket 28-2; Docket 28-3.

In 2014, one of Sovereign's primary assets was a Cesna Citation Jet that was owned by Sovereign's wholly owned subsidiary, Hepar, LLC. Docket 45 at 16-17; Docket 44 at 3. In July 2014, Sovereign received an offer to sell the jet. *See* Docket 45 at 16-17. Sovereign discussed the sale with Northwest. *See id.* In an email dated July 30, 2014, the Executive Vice President for Northwest wrote to Mark that "Northwest Bank consents to the sale of the airplane by Hepar LLC and waives any interest it may have . . . in the airplane or the proceeds from the sale of the airplane." Docket 80-3. Sovereign sold the jet and deposited the money into an attorney trust account and then into a joint account owned by Mark and Mary. Docket 45 at 17. Mark and Mary later filed for divorce, and in his divorce complaint, Mark requested that the proceeds from the jet sale be returned to Sovereign. Docket 80 at 3. The South Dakota Circuit Court granted Mark's request. *Id.* at 5.

While Sovereign was finalizing the sale of the jet, Sovereign also was selling its other primary asset, transportation equipment that was previously owned by Hepar. Docket 80 at 2. After Sovereign notified Northwest about the sale of the equipment, Northwest's Executive Vice President sent Sovereign an email stating that Northwest did "not have a security interest in Sovereign's transportation equipment" and that Northwest took "no position regarding the

2

auction of such equipment." Docket 80-5. Northwest refused, however, to waive any rights to the proceeds of the equipment. *See id.*

A few months after Sovereign sold the jet and the transportation equipment, Hepar BioScience filed a petition under Chapter 11 of the United States Bankruptcy Code. Docket 32 at 3; Docket 28-4 at 1. Northwest participated in Hepar BioScience's bankruptcy proceedings, and the Chapter 11 bankruptcy resulted in a plan where Northwest would be a fully secured creditor and Hepar BioScience would be "absolved of all default and the original payment schedule affirmed" as to the loan from Northwest. Docket 80 at 5; Docket 80-16 at 3. Under the terms of the guaranties, however, Northwest could demand immediate payment from Sovereign if Hepar BioScience filed for bankruptcy, regardless of any actions taken during the bankruptcy proceeding. Docket 34-1; Docket 28-2.

The issue before the court now is whether Northwest may collect attorney fees and expenses from Sovereign. Docket 64. Under the guaranties, Sovereign "agree[d] to pay all expenses of collection, enforcement or protection of [Northwest's] rights and remedies under this Guaranty . . . ." Docket 34-1 at ¶ 11; Docket 28-2 at ¶ 11. This includes "reasonable attorneys' fees, court costs and other legal expenses." Docket 34-1 at ¶ 11; Docket 28-2 at ¶ 11.

## STANDARD OF REVIEW

When interpreting an attorney fee provision of a contract, a federal district court looks to the controlling state law of the contract. *See S. Wine & Spirits of Nev. v. Mountain Valley Spring Co., LLC*, 712 F.3d 397, 399 (8th Cir.

3

2013) (applying Nevada law to attorney fee provision). This court has already determined that Iowa law governs. Docket 59 at 4. Under Iowa law, "[w]hen judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow and tax as part of the costs a reasonable attorney fee to be determined by the court." Iowa Code § 625.22. The party seeking to recover attorney fees must "prove both that the services were reasonably necessary and that the charges were reasonable in amount." *Ales v. Anderson, Gabelmann, Lower & Whitlow, P.C.*, 728 N.W.2d 832, 842 (Iowa 2007). The court, in determining a reasonable award, "look[s] at the whole picture, and using independent judgment with the benefit of hindsight, decide[s] on a total fee appropriate for handling the complete case." *Id.* (citing *Lynch v. City of Des Moines*, 464 N.W.2d 236, 238 (Iowa 1990)).

## DISCUSSION

When determining whether attorney's fees are reasonably necessary, the Iowa courts look to the following factors:

> the time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibility assumed and results obtained, the standing and experience of the attorney in the profession, and the customary charges for similar service."

*Id.* at 842 (quoting *Lynch*, 464 N.W.2d at 238). The parties do not dispute that this litigation involved multimillion dollar liability and that Northwest obtained a judgment for $18,130,003.44 plus interest. Docket 61. The parties also do not dispute that the litigation surrounding the guaranties involved proceedings in South Dakota state court, South Dakota federal court, and United States

4

Bankruptcy Court. Furthermore, the parties do not dispute that the rates charged by Northwest's attorneys are consistent with the rates charged by other attorneys in the area with similar experience. All of these facts support Northwest's request for attorneys' fees

Sovereign's argument is that "the time necessarily spent" on this case by Northwest's attorneys and "the nature and extent of the service" provided is excessive. Sovereign argues Northwest acted unreasonably by bringing the current litigation, by participating in the Nylen's divorce proceedings, and by being involved in Hepar BioScience's bankruptcy.

Sovereign first argues that Northwest's instigation of this action was unreasonable because Sovereign is "judgment proof." According to Sovereign, Northwest cannot collect on the proceeds from the sale of the jet or the transportation equipment because Northwest consented to those sales and expressly waived its rights to the proceeds from the jet. Sovereign argues that because those proceeds are Sovereign's only assets of substance, Northwest knew it could never collect on a judgment from this court. Sovereign's argument, however, ignores the fact that Northwest has a valid claim. Sovereign breached the guaranties it signed. Northwest is not unreasonable for bringing valid litigation. Although Sovereign's argument may prohibit Northwest from collecting certain proceeds in the future, the argument does not bar Northwest from receiving a judgment in its favor. Because Northwest has brought a valid claim against Sovereign, Northwest's actions in this case are reasonable.

Sovereign also argues that Northwest's participation in the Nylen divorce proceedings after June 3, 2015, was unreasonable. Sovereign argues that even though Mark and Mary transferred money from the sale of the jet and the transportation equipment into their personal account, Northwest did not need to participate in the divorce proceedings because the South Dakota State Circuit Court ordered Mark and Mary to transfer the proceeds back into a Sovereign account. The state court also prohibited Mark and Mary from accessing the account without the court's permission. Because the state court entered its order on June 3, 2015, Sovereign requests that this court not award attorney fees for work on the divorce proceedings after that date. Docket 81 at 17-18. Sovereign's argument, however, overlooks the fact that other relevant information may have surfaced during the divorce proceedings. Furthermore, Northwest's actions appear reasonable when the amount of work completed in the divorce proceedings after June 3, 2015, is compared to the amount of money in dispute. Sovereign objects to about 25 hours of work performed by Northwest's attorneys. Docket 64-2; Docket 64-4. The proceeds in dispute totaled $10,821,486.98. Docket 81 at 17. Thus, the court finds the amount of time Northwest spent in connection with the divorce proceedings is reasonable.

Next, Sovereign argues Northwest's participation in the Hepar BioScience bankruptcy was unreasonable because Northwest was a secured creditor and therefore did not need to participate in the bankruptcy proceedings. The court disagrees. It was reasonable for Northwest, as a senior secured lender, to play an active role in Hepar BioScience's Chapter 11 commercial reorganization,

even if Northwest was working privately with Mark. Thus, Northwest's participation in all three hearings was reasonable.

Last, Sovereign argues that Northwest's attorney fees are unreasonable because Whitfield Eddy and Woods Fuller both billed to attend the same hearings, one hearing on April 24, 2015, and the other on August 28, 2015. Northwest's attorneys did not respond to the objection, and the court finds that one attorney could have represented Northwest's interests. The court will deduct the higher amount of attorney fees from each day. The total deduction is $4,565. The total award of attorney's fees is $154,173.90.

## CONCLUSION

It is ORDERED that Northwest's motion for attorney fees (Docket 64) is granted in the amount of $154,173.90.

IT IS FURTHER ORDERED that this court will retain jurisdiction in this matter as to attorney fee and cost applications made related to post-judgment enforcement and collection efforts.

DATED this 29th day of March, 2017.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE